89 F.3d 834
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sandra JURRUS, Plaintiff-Appellant,
v.
Anthony M. FRANK and/or his successor Postmaster General,
U.S. Postal Service, Defendant-Appellee.
 No. 95-3520.
 United States Court of Appeals, Sixth Circuit.
 July 11, 1996.
 
 Before: GUY, NELSON, and BATCHELDER, Circuit Judges
 PER CURIAM.
 
 
 1
 Plaintiff Sandra Jurrus appeals the district court's determination that she was not discriminated against because of her sex in violation of Title VII of the 1964 Civil Rights Act. 42 U.S.C. § 2000e et seq. After a bench trial, the district court found that Jurrus, who had a "lengthy discipline record during her employment with the post office," had not established that defendant Anthony M. Frank's legitimate, non-discriminatory reason for her termination was pretextual. Accordingly, the district court held as a matter of fact that the evidence in the case established that Jurrus' termination resulted from her "horrendous work record" rather than from impermissible sex discrimination. We AFFIRM.
 
 I.
 
 2
 Sandra Jurrus began to work for the U.S. Postal Service in February 1985 as a part-time flexible clerk in the Fostoria, Ohio post office. She remained in this position throughout her tenure there.
 
 
 3
 On April 23, 1990, after a strawberries and sauerkraut lunch, Jurrus returned to work, clocked in, and shortly thereafter went to the ladies' room. Jurrus stayed in the rest room for ten to fifteen minutes.
 
 
 4
 On exiting the rest room, Jurrus was confronted by her supervisor, Terry Robinson, who had been timing Jurrus while she was indisposed. Tapping his feet and staring at his watch, Robinson inquired of Jurrus whether "everything was alright," and asked for an explanation for why Jurrus had taken so long in the rest room.
 
 
 5
 The conversation between Jurrus and Robinson turned nasty, with each wagging an index finger in the other's face. At some point during the exchange, Jurrus told Robinson: "If you really have to know, I was taking a f--king s--t." Jurrus added: "You never say a f--king thing when anyone else does anything around here except [to] Beth and I." Jurrus and Robinson continued their unpleasant exchange for a few more minutes. No one overheard the exchange of words in the conversation, although two of Jurrus' co-workers saw the incident. Robinson said that he felt that Jurrus posed "a potential threat, not only to [him], but to the environment in which [they] were working."[1]
 
 
 6
 On May 3, 1990, Jurrus was formally reprimanded by Robinson for "conduct unbecoming a postal employee." The Postmaster, Frank, who originally hired Jurrus in 1985 was the "concurring official." As a result of this reprimand, Jurrus, whose prior disciplinary record left her supervisors no alternative, was fired in June 1990.
 
 
 7
 Though Jurrus grieved her discharge, an arbitrator denied the grievance after a hearing on the matter. Jurrus also filed an EEO complaint, alleging sex discrimination, but this complaint was dismissed.
 
 
 8
 In March 1992, Jurrus brought this suit in federal district court, arguing that she had been terminated in violation of Title VII. Jurrus' theory was that she had been fired by Robinson in retaliation for previous EEO activity and because of her sex. Jurrus argued that she had been treated differently from "similarly situated" male employees.
 
 
 9
 After a bench trial, the district court entered judgment for the Postmaster General. Jurrus timely appealed the district court's final judgment.[2]
 
 II.
 
 10
 The district court noted that Jurrus established a prima facie case of discrimination. But the court also found that the defendants provided a legitimate, nondiscriminatory reason for Jurrus' discharge. Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). At this stage in the proceedings we must look, as the Supreme Court has recently explained, only at the ultimate factual question in the case: "[W]hether [the] plaintiff has proven 'that the defendant intentionally discriminated against' " her, in this case, because of her sex. St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2749 (1993) (citing Burdine, 450 U.S. at 253).
 
 
 11
 Jurrus finds confusion in the district court's statement that she was "similarly situated" to a male employee who, unlike Jurrus, was not disciplined for his use of profanity. From this statement, she reasons that her termination had to be because of her sex. Jurrus misreads the district court's findings.
 
 
 12
 The district court explained that during Jurrus' tenure with the Postal Service, a male co-worker by the name of William Bintz regularly used profanity in the workplace, both in the presence of and directed to supervisory personnel, including Robinson. Unlike Jurrus, however, Bintz was not disciplined for his vulgar outbursts. Instead, Bintz was given an informal talking-to on at least one occasion.
 
 
 13
 The district court found that Jurrus and Bintz were "similarly situated" in their use of profanity, and found that by showing that she was disciplined for her use of profanity, while Bintz was not, Jurrus' satisfied her burden of making out a prima facie case.[3] The district court went on to explain that being "similarly situated" for purposes of making out a prima facie case is not the same as being "similarly situated" for all purposes in the case. According to the district court, even though Jurrus and Bintz were "similarly situated" for purposes of discipline for use of profanity, they were not "similarly situated" for purposes of termination, because Jurrus's "work history" differed considerably from Bintz's.
 
 
 14
 We understand Jurrus' argument: If she was treated differently in being reprimanded because of her sex, then it must follow that her termination, which resulted, in part, from the discriminatory reprimand, must likewise be unlawful. But the district court found only that Jurrus's different treatment relative to her use of profanity was sufficient to establish a prima facie case of gender discrimination. The district court then found explicitly that Jurrus's gender was not a motivating factor in her discipline and played no part in her discipline or discharge.
 
 
 15
 We have already observed that the only question we consider at this stage in the proceedings is whether Jurrus has proved intentional unlawful discrimination because of her sex. Hicks, 112 S.Ct. at 2749. The district court answered that she had not, and we review this finding only for clear error. Pullman Standard, 456 U.S. 272, 288 (1982). Because Jurrus fails to demonstrate that the district court's factual determination on the ultimate question in the case was clearly erroneous, we AFFIRM.
 
 
 
 [1]
 What the district court called the "sauerkraut and strawberries" incident did not disrupt the work environment, but the Postmaster testified that it "could have."
 
 
 [2]
 Jurrus does not appear to have appealed the district court's resolution of her retaliatory discharge claim
 
 
 [3]
 The district court noted that it was "undisputed ... that [Jurrus] was disciplined for her use of profanity towards Robinson."